UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Matt Larson, | : |
| Plaintiff, | : Civil Action No.: 4:16-cv-706-Y |
| v. | : |
| Conn Appliances, Inc., | : |
| Defendant. | : |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS**
**MOTION TO REOPEN THE CASE AND CONFIRM ARBITRATION AWARD**

Plaintiff, Matt Larson ("Mr. Larson"), by and through his undersigned counsel, and pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA"), respectfully submits this Reply in Support of his Motion to Reopen the Case and Confirm the Arbitration Award in his favor and against Defendant Conn Appliances, Inc. ("Conn"). In support hereof, Mr. Larson states as follows:

I. **ARGUMENT**

   a. **The Parties' Contractual Choice-of-Law Governs Plaintiff's Motion to Confirm**

   1. The arbitration clause in the controlling Retail Installment Contract ("Contract"), which was drafted exclusively by Conn, expressly states that the Federal Arbitration Act ("FAA") shall govern. Specifically, the Contract provides in pertinent part:

   > ARBITRATION: You agree that any claim, dispute or controversy arising from or relating to this Agreement . . . shall be resolved by binding individual (and not class) arbitration . . . . This arbitration clause is made pursuant to a transaction involving interstate commerce and ***shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16), and not by any state law that might otherwise apply.*** Judgment upon the award may be entered in any court having jurisdiction.

(Exhibit 1, Dkt. No. 29-1, p.2) (emphasis added).

2. However, in its Response to Plaintiff's Motion to Reopen the Case and Confirm the Arbitration Award (Dkt. No. 30) ("Response"), Conn argues that "choice-of-law" principals do not apply in the context of confirming an arbitral award. Rather, Conn argues, "at the post-arbitration, enforcement stage," Mr. Larson must show that the transaction at issue shows a substantive nexus to commerce as defined by FAA § 2 for that statute to govern. Response ¶¶ 1-4. Conn is wrong.

3. In *Gateway Techs., Inc. v. MCI Telecommunications Corp.*, the Fifth Circuit considered a motion to confirm an arbitration award where the parties had contractually agreed to an expanded review of any award secured in arbitration. 64 F.3d 993, 996 (5th Cir. 1995). Specifically, their contract stated that "[t]he arbitration decision shall be final and binding on both parties, except that *errors of law shall be subject to appeal*." *Id.* Plaintiff prevailed in arbitration and filed a motion in district court to confirm the award, which awarded actual as well as punitive damages. *Id.* at 995. In confirming the award, the district court failed to interpret "errors of law" under the same rigorous standard appellate courts must apply in reviewing decisions of a trial court and, instead, applied a "harmless error" standard. *Id.* The defendant appealed, and the Fifth Circuit reversed the district court's confirmation of the award and vacated the portion granting punitive damages. *Id.* In so doing, the Fifth Circuit explained that despite the FAA's "extraordinarily narrow" standard of review for arbitration awards, "[b]ecause these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award." *Id.* at 997. The court further explained that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."

*Id.* at 997 n.3 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989)).

4. Thus, under the Fifth Circuit's decision in *Gateway Techs*, parties to an arbitration agreement are free to designate the applicable law and standards pursuant to which an arbitration award may be reviewed by the federal courts.

5. The parties did so here. The Contract expressly states that "arbitration shall be governed by the [FAA], and not by any state law that might otherwise apply. Judgment upon the award may be entered in any court having jurisdiction." (Exhibit 1, Dkt. No. 29-1, p.2). Thus, the FAA provides the proper legal standard that this Court must apply to Mr. Larson's Motion to Confirm the Arbitration Award, and Conn's argument to the contrary lacks merit.

6. Under Section 9 of the FAA, "[i]f the parties in the agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in Section 10 and 11 of this title." 9 U.S.C. § 9.

7. There are no valid grounds for vacating, modifying, or correcting the Award.[1]

8. Accordingly, this Court must confirm the Award and enter judgment in favor of Mr. Larson. See 9 U.S.C. § 9 (providing "the court must grant" an application to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in Section 10 and 11 of this title.").

---

[1] Although Conn claims in a footnote that "the arbitrator made a 'gross mistake' and 'manifestly disregarded the law' by ruling in favor of Mr. Larson" ("Response ¶ 19 n.2), Conn states that the reasoning for its argument that the ruling was incorrect are not before this Court for the purposes of its submission (*Id.* ¶ 19). Nonetheless, as will be discussed *infra*, Conn is incorrect that Arbitrator Flores manifestly disregarded the law, which is no longer an applicable standard in any event, and the award cannot be vacated on that – or any other – ground.

### b. In the Alternative, There Is a Sufficient Nexus Between Conn's Activities and Interstate Commerce to Warrant Application of the FAA

9. Conn argues that for the FAA to apply here, Mr. Larson must show that the Parties' relationship involves "commerce" pursuant to 9 U.S.C. § 2, which is defined as interstate commerce under 9 U.S.C. § 1. However, as discussed above, Mr. Larson need not make that showing because the FAA applies by virtue of the Parties' choice-of-law clause in the controlling Contract. Nonetheless, should this Court determine that a nexus to interstate commerce must be shown, Mr. Larson has done so here.

10. Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a *contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

11. In *Allied-Bruce Terminix Companies, Inc. v. Dobson*, the Supreme Court reasoned that these words "cover more than 'only persons or activities within the flow of interstate commerce.'" 513 U.S. 265, 273 (1995) (quoting *United States v. American Building Maintenance Industries*, 422 U.S. 271, 276, (1975)). Rather, the words "involving commerce" are the functional equivalent of "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273-274 (citing *Russell v. United States*, 471 U.S. 858, 859 (1985). Thus, the reach of 9 U.S.C. § 2's application to "transactions involving commerce" must be broadly interpreted to coincide with Commerce Clause powers. *Id.* at 274.

12. In the seminal case *Katzenbach v. McClung*, the Supreme Court addressed the reach of Commerce Clause powers in considering whether Congress may constitutionally

prohibit racial discrimination in restaurants via the Civil Rights Act.  379 U.S. 294 (1964).  In that case, the owner of an Alabama restaurant, Ollie's Barbecue, argued that Congress could not regulate his business's policy of refusing to serve black customers because the restaurant's activity did not involve interstate commerce.  *Id.* at 296-97.  The Court disagreed and found that Civil Rights Act was constitutional as applied to Ollie's Barbecue pursuant to Congress' Commerce Clause powers.

> 13. In so doing, the Court explained that:
>
> Article I, s 8, cl. 3, confers upon Congress the power '(t)o regulate Commerce . . . among the several States' and Clause 18 of the same Article grants it the power '(t)o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers.' This grant . . . 'extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce.' (quoting *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942).

*Id.* at 301-02.  Accordingly, this power extends to activities of retail establishments which directly or indirectly affect interstate commerce.  *Id.* at 302.  Thus, because (1) Ollie's Barbecue served food "a substantial portion of which has moved in interstate commerce" and occasionally served interstate travelers, and (2) refusing to serve black customers affected that commerce, Congress acted within its powers in prohibiting racial discrimination at restaurants (regardless whether the customers discriminated against were local or from out of state).  *Id.* at 303-04.

14. Here, Conn's activities undeniably involve interstate commerce.  Conn is a furniture, electronics, and appliance retailer with stores throughout the southern and mid-western United States.[2]  There can be no question that Conn's Hurst, Texas location, where Mrs. Larson purchased various items and executed the Contract, imports much of the goods it sells from other states and abroad.  And certainly *some* of its customers must come from out-of-state.  Thus, the

---

[2] See the "Locations" page of Conn's website, https://www.conns.com/store-locator (last visited June 28, 2019).

reach of FAA 9 U.S.C. § 2's requirement of a "transaction involving commerce," which must be broadly interpreted to coincide with that of the Commerce Clause, clearly encompasses Conn's activities here.  *See Allied-Bruce*, 513 U.S. at 274; *Katzenbach*, 379 U.S. 303-04.

15.   Thus, not only did the Parties validly incorporate the FAA as their choice-of-law in the Contract, but Mr. Larson has also shown a sufficient nexus between Conn's activities and interstate commerce to warrant application of the FAA to his Motion to Confirm the Arbitration Award.

16.   This is confirmed by the Eastern District of Kentucky's decision in *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 779 (E.D. Ky. 2014).  In that case, a nursing home sued to compel arbitration of a dispute that the administratrix of one of its deceased residents, Anna Stacy ("Stacy"), had filed in state court.  Stacy argued, *inter alia*, that the subject arbitration clause was unenforceable because it did not evidence a transaction involving commerce as required by 9 U.S.C. § 2.  The court disagreed and held that the arbitration clause was valid and enforceable under the FAA:

> It is beyond dispute that the transaction in this case falls within the scope of the FAA. Stacy correctly contends that the care provided to her occurred only within the borders of Kentucky, but this is not the relevant question at issue. As another court in Kentucky explained in a similar case, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." (quoting *GNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, at *8 (W.D. Ky. Dec. 19, 2013). There is no suggestion by Stacy that the services rendered by the plaintiffs were done so without the use of any goods purchased through interstate commerce, and the Court would be skeptical of such a claim. More importantly, the "general activity" of providing healthcare to Stacy—even if contained to an intrastate market in this individual case—is without a doubt the kind of activity that in the aggregate is subject to federal control under the Commerce Clause.

*Id.* at 791–92.  Thus, it is irrelevant whether Mrs. Larson's purchases from Conn – and the subsequent harassing calls Conn placed to Mr. Larson regarding those purchases that are at the

6

core of this dispute – occurred exclusively within the borders of Texas. Mrs. Larson purchased a refrigerator, dishwasher, and mattress (Exhibit 1, Dkt. No. 29-1, p.1) which, surely, Conn obtained via interstate commerce. Further, Conn's general activity as a brick-and-mortar retailer is "without a doubt the kind of activity that in the aggregate is subject to federal control under the Commerce Clause." *Id*. Finally, the company from which Conn purchased the Noble dialing system that it used to call Mr. Larson, Noble Systems, is headquartered in Atlanta, Georgia.[3] Thus, there is a sufficient nexus between Conn's activities and interstate commerce to warrant application of the FAA to Mr. Larson's Motion to Confirm the Arbitration Award.

### c. Conn's Motion to Dismiss is Improper and Should be Stricken

17. Conn attempts to frame its Response as a Rule 12(b)(6) Motion to Dismiss.

18. This is improper.

19. This Court has expressly held that motions to confirm an award under the FAA are treated as motions, not pleadings. *Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013) ("Under the FAA, applications to confirm or vacate an arbitration award are treated as motions, not a pleading initiating an action. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided by law for the making and hearing of motions.")). Thus, Conn was required to raise any substantive objections to Mr. Larson's Motion in its Response, and its Motion to Dismiss should be stricken.[4]

### d. Because the Arbitrator Did Not "Manifestly Disregard the Law," the Award Must be Confirmed

---

[3] See https://www.noblesystems.com/about-noble/our-history/ (last visited June 28, 2019).
[4] In the event Conn seeks to file a Reply Brief in support of its improper Motion to Dismiss, Mr. Larson vigorously objects to its right to do so.

20.     Although Conn urges that any substantive arguments against Mr. Larson's Motion to Confirm are not before the Court in its improperly filed Motion to Dismiss (Response ¶ 19) Conn nonetheless argues that Arbitrator Flores manifestly disregarded the law in ruling in favor of Mr. Larson (*Id.* ¶ 19 n.2).

21.     Specifically, Conn argues that Mr. Larson failed to prove a requisite element of his TCPA claim, namely that Conn used an "automatic telephone dialing system" ("ATDS") as defined by that statute.

22.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

23.     Conn argues that this requires proof that its "Noble Dialer" could randomly or sequentially generate numbers to qualify as an ATDS, and because its dialer cannot do that, the Arbitrator "manifestly disregarded the law" in finding that Conn's Noble Dialer was an ATDS. Again, Conn is wrong.

24.     In 2003, the FCC, which administers the TCPA, issued an order in which it "found that equipment can qualify as an ATDS if it (1) 'store[s] pre-programmed numbers or receive[s] numbers from a computer database'; (2) can 'dial those numbers at random, in sequential order, or from a database of numbers'; and (3) its 'basic function' is 'the *capacity* to dial numbers without human intervention.'" *Zeidel v. A&M (2015) LLC*, 2017 WL 1178150, at *10 (N.D. Ill. Mar. 30, 2017) (quoting 2003 FCC Ruling at 14090–92).  Telephone systems with these capabilities are known as "predictive dialers."  *See id.*

8

25. In 2008, the FCC issued another declaratory order that affirmed the 2003 Order's designation of predictive dialers as ATDSs. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008).

26. In 2018, the D.C. Circuit Court addressed a challenge to the validity of a later, 2015 FCC Order, which it ultimately vacated. *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018). Following *ACA Int'l*, there has been a split of authority among the district courts as to whether the D.C. Circuit also vacated the 2003 and 2008 Orders. *See, e.g., Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) ("As several other courts have recently observed, *ACA Int'l* vacated the 2015 Declaratory Ruling but it did not clearly intend to disturb the FCC's 2003 and 2008 orders."); *but see* Pinkus v. Sirius XM Radio, Inc., 319 F. Supp. 3d 927, 935 (N.D. Ill. July 26, 2018) (finding that *ACA Int'l* vacated the 2003 and 2008 Orders).

27. Further, following *ACA Int'l*, some courts have found that, even under a statutory interpretation of the TCPA's language, predictive dialers remain ATDSs. *See, e.g.*, *Marks v. Crunch San Diego*, LLC, 904 F.3d 1041, 1052 (9th Cir. 2018) ("the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator."); *Gonzalez v. HOSOPO Corp.*, No. CV 18-10072-FDS, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) (following *Marks*). Other courts disagree and require that, under the statutory definition, a dialer must have the capacity to randomly or sequentially generate phone numbers to qualify as an ATDS.

28. The subject arbitration was conducted within this Court's jurisdiction, and neither this Court nor the Fifth Circuit have yet to decide whether predictive dialers remain ATDSs following *ACA Int'l*.

9

29. On Summary Judgment, Mr. Larson argued that Conn's Noble Dialer was a predictive dialer and, thus, an ATDS under the 2003 and 2008 FCC Orders and under the statutory definition as interpreted by the Ninth Circuit in *Marks* and the District of Massachusetts in *Gonzalez*. Arbitrator Flores agreed and entered judgment in Mr. Larson's favor. Exhibit 2, Award, Dkt. No. 29-2, ¶ 5 ("[T]he system used by [Conn] was an [ATDS] under the TCPA, both under the definition under the TCPA, and under the FCC's 2003 and 2008 Order.").

30. Conn argues only that Arbitrator Flores made a "gross mistake" and "manifestly disregarded the law" by declining to require proof of random number generation and ruling in favor of Mr. Larson. However, the *only* grounds for vacating an award under the FAA are

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Although court's have previously applied a fifth ground for vacatur, known as "manifest disregard of the law," the Fifth Circuit has explained that, under the Supreme Court's decision in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), "the statutory provisions are the exclusive grounds for vacatur, [and] manifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected. Indeed, the term itself, as a term of legal art, is no longer useful in actions to vacate arbitration

awards." *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). Thus, Conn has raised no valid basis for vacatur of the Award.[5]

31. Further, even if "manifest disregard of the law" remained a valid ground for vacatur, it certainly did not occur here. "'Manifest disregard' means more than error or misunderstanding with respect to the law. The arbitrators must have appreciate[d] the existence of a clearly governing principle but decided to ignore or pay no attention to it. Furthermore, the governing law ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 382 (5th Cir. 2004) (citations and internal quotations omitted). Arbitrator Flores followed the sound reasoning of those district and circuit courts that have determined that predictive dialers such as Conn's are ATDSs under the TCPA's statutory language and under the still-valid 2003 and 2008 FCC Orders. The mere fact that other courts have held otherwise – especially in light of the fact that neither this Court nor the Fifth Circuit have issued any controlling decisions – hardly constitutes a failure to follow "well defined, explicit, and clearly applicable" law. As such, Arbitrator Flores did not commit manifest disregard of the law in ruling in favor of Mr. Larson, and the Court must, therefore, confirm the Award. *See* 9 U.S.C. § 9.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order confirming and entering judgment upon the Award.

---

[5] To the extent Conn argues Texas law should apply here, the Supreme Court of Texas has likewise ruled that "manifest disregard of the law" is not a valid ground for vacatur under the Texas General Arbitration Act. *Hoskins v. Hoskins*, 497 S.W.3d 490, 497 (Tex. 2016).

Dated: June 28, 2019

Respectfully submitted,

By */s/ Jody B. Burton*

Jody B. Burton, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
E-mail: jburton@lemberglaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2019, a true and correct copy of the foregoing Motion to Reopen Case and Confirm Arbitration Award was filed electronically by the U.S. District Court for the Northern District of Texas Electronic Filing System (ECF), which sent notice of such filing to the following parties listed below:

Michael A. Harvey, Esq.
Jacqueline M. Wheeler, Esq.
Munsch Hardt Kopf & Harr, P.C.
Pennzoil Place
700 Milam Street, Suite 2700
Houston, TX 77002

/s/ *Jody B. Burton*
Jody B. Burton, Esq.