IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MATT LARSON                         §
                                    §
VS.                                 §        ACTION NO. 4:16-CV-706-Y
                                    §
CONN APPLIANCES, INC.               §

ORDER GRANTING MOTION TO
CONFIRM ARBITRATION AWARD AND DENYING MOTION TO DISMISS

Pending before the Court is the Motion to Reopen the Case and Confirm the Arbitration Award (doc. 29).  In the motion, plaintiff Matt Larson requests that the May 19, 2019 ruling and final award by the American Arbitration Association ("AAA") in his favor be confirmed under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. In response, defendant Conn Appliances, Inc. ("Conn") moved to dismiss Larson's motion under Federal Rule of Civil Procedure 12(b)(6).  After review of the motions, the related briefs, and the applicable law, the Court concludes that Conn's motion to dismiss should be denied, and Larson's motion to confirm the arbitration award should be granted.

## I.  Factual Background

Conn is a furniture, mattress, electronics, and appliance retailer headquartered in Texas that operates stores throughout the southern and midwestern United States.  On January 20, 2016, at Conn's store in Hurst, Texas, Larson's wife entered into a fill-in-the-blanks form retail installment contract with Conn under which she financed the purchase of a refrigerator, dishwasher, and mattress. In the

contract, Larson's wife provided Larson's cellular telephone number as her home telephone number.  Her home address is listed on the contract as being located in North Richland Hills, Texas.  The contract contains on the second page the following preprinted arbitration provision:

> ARBITRATION: You agree that any claim, dispute or controversy arising from or relating to this Agreement . . . shall be resolved by binding individual(and not class) arbitration by and under the administration of . . . the American Arbitration Association ("AAA") in accordance with its Arbitration Rules in effect at the time the claim is filed . . . . The claim or dispute will be arbitrated by a single arbitrator on an individual basis and not as a class action.  You and we are waiving the right or opportunity to litigate disputes in a court of law. . . . This arbitration clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16), and not by any state law that might otherwise apply.  Judgement upon the award may be entered in any court having jurisdiction.

(Larson's Mot. (doc. 29) Ex. 1, at 2.)

Larson claims that soon after the contract was entered, Conn began placing calls to his cellular telephone through the use of a Noble Systems Corporation phone system ("Noble system").  On April 26, 2016, Larson contacted Conn and revoked consent to receive Conn's calls on his cell phone.  Nevertheless, over the ensuing five weeks, Larson claims that Conn placed 249 calls to his cell phone using its Noble system.

As a result, on July 28, 2016, Larson filed this lawsuit alleging that Conn violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*  Conn answered, and on March 23, 2018, the parties agreed to proceed with arbitration as required in their contract. As a result, on April 11, the Court stayed Larson's claims,

compelled arbitration, and administratively closed the case.  The order noted that "the case may be reopened, without prejudice, upon the motion of either party filed no later than thirty days after the arbitrator issues a final decision."

The parties proceeded to arbitrate Larson's claim with an AAA arbitrator.  On May 15, 2019, the arbitrator granted summary judgment in favor of Larson, concluding that Conn's Noble system was an "automated telephone dialing system" as defined under the TCPA and that Conn had violated the TCPA by making 249 calls to Larson's cell telephone after he revoked consent.  The arbitrator awarded Larson $373,500 in statutory damages and post-award interest in the amount of five percent per annum commencing on the thirtieth day after the date of the award until paid.  Six days later, Larson filed his motion seeking that this Court confirm the award under section 9 of the FAA. Conn seeks dismissal, contending that the FAA does not apply because the underlying transaction was solely an intrastate transaction.

## II. The Federal Arbitration Act

The FAA was enacted to overcome widespread judicial hostility to enforcing arbitration agreements.  *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 474 (1989). "The Act was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts."  *Id.* (quotations omitted). Indeed, the FAA reflects "a fundamental principle that arbitration is a matter of contract."  *Rent-a-Center West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

Thus, section 2 of the FAA "declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2, and § 4 allows a party to such an arbitration agreement to 'petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Volt*, 489 U.S. at 474. Section 1 of the FAA defines "commerce" as "commerce among the several states." 9 U.S.C.A. § 1 (West 2009). And section 9 permits a party to seek judicial confirmation of the arbitrator's award if the parties to the arbitration agreement agreed that judgment may be entered on the award. *Id.* § 9.

"Not only did Congress require courts to respect and enforce agreements to arbitrate, it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). "Arbitration under the FAA is a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreements as they see fit." *Volt*, 489 U.S. at 472. Thus, "[c]ourts should not 'override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Gomez v. O'Reilly Auto Enters., LLC*, 3:17-CV-00284-KC, 2018 WL 8578438, *1 (W.D. Tex. June 18, 2018). But the FAA requires courts to "rigorously . . . enforce arbitration agreements according to their terms, including terms that specify

with whom the parties chose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228,  233 (2013) (quotations omitted).

### III.  Analysis

Larson now seeks confirmation of the award made by the AAA arbitrator.  Conn contends that Larson's request for confirmation should be dismissed because the transaction between Conn and his wife involved only intrastate commerce, and not interstate commerce as required by FAA section 2.

Initially, the Court notes that this is not a question of jurisdiction.  As alleged in Larson's original complaint, the Court possesses federal-question subject-matter jurisdiction over his claims, inasmuch as they arise under the TCPA.  Rather, Conn instead asserts that this Court lacks authority to confirm the award under the FAA because the parties' transaction did not involve interstate commerce.

Contrary to Conn's contention, however, it and Larson's wife specifically agreed in their contract that their transaction was one involving interstate commerce.  The arbitration clause explicitly states that "[t]his arbitration clause is made pursuant to a *transaction involving interstate commerce*."  (Larson's Mot. (doc. 29) Ex. 1 at 6 (emphasis added).)  As a result, the Court is reluctant to credit Conn's profession to the contrary now that it has lost in arbitration.

And in any event, it appears clear that the transaction in which

Conn and Larson's wife entered was indeed one involving interstate commerce, as that term is interpreted.  The phrase "involving commerce" as used in section 2 of the FAA is understood to implicate the full breadth of Congress's power under the Commerce Clause.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.") (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, at 273-74.)  Thus, "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'-—that is, 'within the flow of interstate commerce.'" *Id.* (citing *Allied–Bruce*, 513 U.S. at 273).  Indeed, "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control."  *Id.* at 56-57 (quotations omitted).

For example, in *Citizens Bank*, the Court concluded that renewal loan agreements restructuring prior debts between a construction company and a lending institution that included a clause requiring arbitration under the FAA evidenced the required interstate-commerce nexus even though the agreements were executed in Alabama by Alabama citizens.  539 U.S. at 53-54, 57.  The Court noted that the construction company was engaged in business throughout the southeastern United States and that the restructured debt was secured

by its inventory, which was assembled from out-of-state parts and raw materials.  *Id*. at 57. The Court also concluded that the "general practice" the agreements represented certainly involved interstate commerce, inasmuch as "[n]o elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause." *Id.* at 38.

Similarly, in *Brookdale Senior Living Association v. Stacy*, 27 F. Supp. 3d 776 (E.D. Ky. 2014), the district court concluded that the administratrix of a deceased resident at a nursing home was required to arbitrate the estate's negligence claim under the FAA, despite the fact that the care in question was provided to a Kentucky resident in Kentucky.  The court concluded that interstate commerce was nevertheless involved in the transaction:

> It is beyond dispute that the transaction in this case falls within the scope of the FAA.  Stacy correctly contends that the care provided to [the decedent] occurred only within the borders of Kentucky, but this is not the relevant question at issue.  As another court in Kentucky explained in a similar case, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." [*GNSC Louisville Hillcreek v.]
> Warner*, 2013 WL 6796421 at *8 [(W.D. Ky. Dec. 19, 2019)].
> There is no suggestion by Stacy that the services rendered by the plaintiffs were done so without the use of any goods purchased through interstate commerce, and the Court would be skeptical of such a claim. More importantly, the "general activity" of providing healthcare to Stacy--even if contained to an intrastate market in this individual case--is without a doubt the kind of activity that in the aggregate is subject to federal control under the Commerce Clause.

*Id.* at 791-92; *see also Eman-Henshaw v. Park Plaza Hosp.*, 129 F.3d 610, 1997 WL 681184, at *2 (5th Cir. 1997) (reversing district court's refusal to compel arbitration of discrimination claims in accordance

with arbitration provision in employment contract; concluding that the record reflected that the employer hospital "engages in interstate business activities such as receiving goods and services from out-of-state vendors, treating out-of-state patients, and receiving payment from out-of-state insurance carriers for services rendered[, and that the plaintiff's] employment as a food service worker at the hospital facilitates its interstate commerce activities").

For similar reasons, this Court concludes that the retail installment contract entered into between Conn and Mrs. Larson constituted a transaction involving interstate commerce for purposes of the FAA. By way of that agreement, Conn provided Mrs. Larson with a method of financing the goods she purchased from Conn. Such financing activities are similar to the debt restructuring loans at issue and found to involve interstate commerce in *Citizens Bank*. And Larson has alleged, and Conn has not disputed, that Conn engages in such activities throughout the southern and midwestern United States and obtains the goods it sells, including the goods sold to Mrs. Larson, via shipments in interstate commerce. The Court concludes that Larson has adequately demonstrated that his wife's transaction with Conn involved interstate commerce. Indeed, as previously noted, Conn admitted as much in the arbitration clause of the agreement.

Conn relies heavily on language in *Allied-Bruce*, 513 U.S. at 281, where the Supreme Court accepted a "commerce-in-fact interpretation" of the FAA. Conn contends that as a result, the parties' individual transaction must in fact involve interstate commerce before

a federal court can enforce an arbitration award.  But in *Allied-Bruce* the Court simply chose between two competing interpretations of the FAA: one that read "the Act's language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection," (*id.* at 281), and the other, narrower interpretation requiring that, "*at the time [the parties] entered into [the contract]* and accepted the arbitration clause, they *contemplated* substantial interstate activity,'" (*id.* at 277 (quoting *Metro Indus. Painting Corp. v. Terminal Constr. Co.* 287 F.2d 382, 387 (2d Cir. 1961) (concurring opinion)).  Thus, the Court was distinguishing between whether the contract merely had to implicate interstate commerce in fact, or whether the parties to the contract must have understood when agreeing to the arbitration clause that their contract implicated interstate commerce.  Here, the contract not only implicated interstate commerce in fact, but the parties obviously contemplated that it did so given their agreement in the arbitration clause that the transaction implicated interstate commerce.  As a result, this Court cannot discern how *Allied-Bruce* helps Conn's position.[1]

Conn additionally suggests that "the arbitrator made a 'gross mistake' and 'manifestly disregarded the law' by ruling in favor of Mr. Larson." (Conn's Resp. (doc. 30) 4-5, n. 2.)  But as Conn itself

---

[1]Conn also relies heavily on the Fifth Circuit's decision in *Atlantic Aviation v. EBM Group*, 11 F.3d 1276, 1280 (5th Cir. 1994), but the holding in that case  "was implicitly overruled by the Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)."  *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 341 n.10 (5th Cir. 2004).

notes, these are not viable defenses to confirmation when the FAA applies.  Rather, in determining whether to vacate an award under the FAA, the Court's review is limited; indeed, the "award shall not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers." *Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 996 (5th Cir. 1995) (citing 9 U.S.C. § 10(a)(1)-(4)).  These grounds provide the only basis for vacatur of an award under the FAA on judicial review.  *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  And Conn has not demonstrated that vacatur is warranted based on any of these grounds.

## IV.   Conclusion

For the foregoing reasons, Larson's Motion to Confirm the Arbitration Award is GRANTED, and Conn's Motion to Dismiss is DENIED.

SIGNED April <u>23</u>, 2020.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE